FILED

2010 OCT -8 AM 9: 10

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL NO. **1 1 1 0 C V 3 4 9** |
| v. | ) | |
| | ) | |
| CAMERON J. MARLEY, CANDIS N. MARLEY | ) | |
| aka CANDIS NICOLE TIEMAN, US BANK, N.A., | ) | |
| INDIANA HOUSING AUTHORITY, and MARKLE | ) | |
| BANK | ) | |
| | ) | |
| Defendants. | ) | |

## C O M P L A I N T

Comes now plaintiff, United States of America, on behalf of its agency, the Rural

Housing Service (formerly known as Farmers Home Administration), its successors and assigns,

by David Capp, United States Attorney for the Northern District of Indiana, and states:

### JURISDICTION/VENUE

This Court has jurisdiction pursuant to 28 U.S.C. Section 1345, and venue is properly

lodged in this Court.

### COUNT I (Action for Debt)

As claim against the defendants, Cameron J. Marley, Candis N. Marley aka Candis

Nicole Tieman, the plaintiff asserts:

1. On or about the date listed thereon, the defendants, Cameron J. Marley, Candis N.

Marley aka Candis Nicole Tieman, executed and delivered to plaintiff, United States of America,

acting through the Farmers Home Administration, its successors and assigns, United States

Department of Agriculture, the following Promissory Note (hereinafter referred to as "the Note")

under which they are currently indebted to the United States:

| Designation | Date of Execution | Note Principal Sum |
|---|---|---|
| Exhibit A | June 27, 2005 | $74,030.00 |

2. On or about June 27, 2005, the defendant, cameron J. Marley, Candis N. Marley aka

-1-

Candis Nicole Tieman  and the United States of America entered into an Subsidy Repayment

Agreement under which the United States abated the payment of interest on this loan, but

provided for the recapture of any interest credit granted "when the property securing the loan is

sold, or title to it is transferred or when it is no longer occupied by the Borrower." A copy of said

Subsidy Repayment Agreement is attached hereto as Exhibit "B".

3. Said defendants, Cameron J. Marley, Candis N. Marley aka Candis Nicole Tieman

defaulted and failed to make the payments required by the Note, and/or otherwise defaulted in

regard to their obligations to plaintiff under the provisions of the Note.

4. All conditions precedent to the assertion of this cause of action against the said

defendants, Cameron J. Marley, Candis N. Marley aka Candis Nicole Tieman, have been

satisfied and/or occurred.

5. Plaintiff has made the following payments as permitted by the provision of the Note

and security instruments and said payments have become part of the indebtedness:

> Insurance:     $912.50
> Title Search: $325.00
> Fees:          $  10.41

6. As of September 27, 2009, the balance of the indebtedness of the defendant and the

subsequent interest accrual to the date of judgment is the following with respect to the attached

debt instruments:

| Designation | Balance | Per Diem Interest Accrual |
|---|---|---|
| **Exhibit A** | **$74,904.05** | **$10.8240** |
| **Late Charges** | **$    98.76** | |
| **Interest Credits Recapture** | **$ 2,686.68** | |

7. The personal liability of the debtor-defendant, Candis N. Marley aka Candis Nicole

Tieman, has been discharged by an order entered by the United States Bankruptcy Court, and the

judgment sought by this Court is in rem only with respect to the debtor-defendant.

**WHEREFORE,** plaintiff respectfully prays that the Court:

A. Enter judgment in personam in favor of the plaintiff and against the defendant, Cameron J. Marley, individually, in the principal amount of $71,582.45 with interest thereon through September 27, 2009, in the sum of $3,420.36, plus late charges of $98.76, plus interest at the rate of $10.8240 per day from June 28, 2005, until the date of entry of judgment, plus such further costs and expenses as may be incurred to the date of judgment, and all other costs herein, without relief from valuation or appraisement laws.

B. Enter judgment in rem in favor of the plaintiff and against the defendant, Cameron J. Marley, individually, for interest credit recapture in the amount of $2,686.68, through September 27, 2009, plus such further costs and expenses as may be incurred to the date of judgment, and all other costs herein, without relief from valuation or appraisement laws.

C. Enter judgment in rem in favor of the plaintiff and against the defendant, Candis N. Marley aka Candis Nicole Tieman, individually, in the principal amount of $71,582.45, interest credit recapture of $2,686.68, together with interest thereon through September 27, 2009, in the sum of $3,420.36, plus late charges of $98.76, plus interest at the rate of $10.8240 per day from June 28, 2005, until the date of entry of judgment, plus such further costs and expenses as may be incurred to the date of judgment, and all other costs herein, without relief from valuation or appraisement laws.

C. Provide the plaintiff with such other and further relief as is just and proper in the premises.

### COUNT II (Action for Mortgage Foreclosure)

As claim against the defendants, Cameron J. Marley, Candis N. Marley aka Candis Nicole Tieman, the plaintiff asserts:

1. To secure the indebtedness evidenced by Exhibit "A", the defendants, Cameron J. Marley, Candis N. Marley aka Candis Nicole Tieman, executed and delivered to plaintiff, United States of America, acting through the Farmers Home Administration, its successors and assigns,

United States Department of Agriculture, a Real Estate Mortgage (hereinafter referred to as "the Mortgage") dated June 27, 2005, on certain real estate described as follows:

Situated in the State of Indiana, County of Allen

LOT NUMBER 46 IN HARLAN GARDENS, SECTION II, AS RECORDED IN PLAT CABINET E, PAGE 126 AND DOCUMENT NUMBER 202085895

Commonly known as: 16522 Sunflower Blvd., Harlan, Indiana 46743

The Mortgage was duly recorded on August 5, 2005 in the Office of the Recorder of Allen County. A true and accurate copy of the Mortgage is attached hereto, as Exhibit "C".

2. Said defendant defaulted and failed to make the payments required by the Note, and/or otherwise defaulted in regard to their obligations to plaintiff under the provisions of the Note and/or Mortgage and the entire indebtedness of the defendant is now due.

3. On April 21, 2009, defendant, Cameron J. Marley, deeded his half interest in the real property describe in Group Exhibit "E", to Candis N. Marley aka Candis Nicole Tieman, as evidenced by Quit-Claim Deed, recorded May 4, 2009, in Deed Records record #2009021319, Allen County, Indiana. A copy of Quit-Claim Deed and Release of Liability is attached hereto as Group Exhibit "E".

4. All conditions precedent to the assertion of this cause of action against the said defendant have been satisfied and/or have occurred.

5. The defendants, Cameron J. Marley, Candis N. Marley aka Candis Nicole Tieman, other than the debtor-defendants designated in this Count purports to have interest in the real estate described in attached Exhibit "C", as evidenced by the title evidence attached as Exhibit "D", and are named as defendants to answer the extent of their interest.

6. Allen County, Indiana may claim to have liens on the subject real estate in regard to real property taxes either delinquent or not yet due and payable -- or both; however, because said liens are not subject to foreclosure in this suit, Allen County has not been joined in this suit, and the

-4-

real estate shall remain subject to said liens subsequent to the foreclosure sought herein.

7.  The City of Harlan, Indiana may claim to have liens on the subject real estate in regard to assessed delinquent municipal sewer obligations; however, because said liens are not subject to foreclosure in this suit, that entity has not been joined in this suit, and the real estate shall remain subject to said liens subsequent to the foreclosure sought herein.

**WHEREFORE,** plaintiff respectfully prays that the Court:

A.  Declare plaintiff's Mortgage to be a valid, first and subsisting lien on the real estate superior to all claims, liens or interests asserted or which may be asserted against the real estate by the named defendant.

B.  Enter an order foreclosing the Mortgage of plaintiff on the real estate and foreclosing and barring all of the defendant's equity of redemption and interest in the real estate and directing the sale of the real estate pursuant to applicable law in order to pay the judgment of plaintiff, with the proceeds of said sale to be first applied to the indebtedness of the plaintiff secured by the Mortgage hereby foreclosed, and with any then-remaining overplus paid to the Clerk of the Court to be disposed of as the Court shall direct;

C.  Provide the plaintiff with such other and further relief as is just and proper in the premises.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By: _____
DEBORAH M. LEONARD
Assistant United States Attorney
E. Ross Adair Federal Bldg.
U.S. Courthouse
1300 South Harrison Street, Rm3128
Fort Wayne, Indiana  46802
Telephone Number:  (260) 422-2595
Facsimile:  (260) 426-1616
deborah.leonard@usdoj.gov

Form RD 1940-16
(Rev. 6-99)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL HOUSING SERVICE**

**PROMISSORY NOTE**

Type of Loan   SECTION 502                                      Loan No.

Date:   05-27-2005

16522 Sunflower Blvd,
_____
(Property Address)
Harlan_____, Allen_____, IN_____
(City or Town)        (County)        (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 74,030.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of ____5.6250____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

    I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

    II. Payments shall not be deferred. I agree to pay principal and interest in _____396_____ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the _27th_ day of each month beginning on _____June 27_____ , _2005_ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _____May 27_____ , 2038 , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 411.62 _____ . I will make my monthly payment at the post office address noted on my billing statement _____ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

I affirm, under the penalties for perjury,
that I have taken reasonable care to
redact each Social Security number in
this document, unless required by law.

EXHIBIT A

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of ___15__ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account #

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal
Borrower Cameron J Marley

_____ Seal
Borrower Candis N Marley

_____ Seal
Borrower

_____ Seal
Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| TOTAL    $ | | | | | |

3

FORM RECD 1944-14                                                      PAGE 2
                    UNITED STATES DEPARTMENT OF AGRICULTURE
                              RURAL HOUSING SERVICE
              PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
        ------------------------------------------------------------
4. INCOME & PAYMENT CALCULATIONS-TO BE COMPLETED BY RHS OFFICIAL OR DESIGNEE.

       TOTAL ANNUAL INCOME   36,180.00
       DEDUCTIONS             3,840.00
       ADJUSTED ANN INCOME   32,340.00

       ADJUSTED ANNUAL INCOME EQUALS   60.11 % OF MEDIAN INCOME
       EQUIVALENT RATE OF INTEREST IS   4.0000 %

       MONTHLY INSTALLMENT BASED ON EQUIVALENT RATE OF INTEREST    336.99
       MONTHLY REAL ESTATE TAX PAYMENT                             75.00
       MONTHLY PROPERTY INSURANCE PAYMENT                          41.33
       TOTAL PITI BASED ON EQUIVALENT RATE OF INTEREST            453.32

       ADJUSTED INCOME X 24% / 12                                 646.80
       MONTHLY NOTE RATE INSTALLMENT                              411.62
       MONTHLY PAYMENT                                            336.99
       MONTHLY PAYMENT ASSISTANCE                                  74.63


5. SUBJECT TO THE PROVISIONS OF THIS AGREEMENT,  THE BORROWER WILL PAY   336.99
   DOLLARS PER MONTH FOR 24 MONTHS BEGINNING  06/27/05.  THIS AGREEMENT MAY BE
   REVISED OR CANCELED AS PROVIDED BY THE CONDITIONS LISTED ON PAGE 3 OF
   THIS AGREEMENT.


PUBLIC REPORTING BURDEN FOR THIS COLLECTION OF INFORMATION IS ESTIMATED TO
AVERAGE 20 MINUTES PER RESPONSE, INCLUDING THE TIME FOR REVIEWING INSTRUCTIONS,
SEARCHING EXISTING DATA SOURCES, GATHERING AND MAINTAINING THE DATA NEEDED, AND
COMPLETING AND REVIEWING THE COLLECTION OF INFORMATION.  SEND COMMENTS REGARDING
THIS BURDEN ESTIMATE OR ANY OTHER ASPECT OF THE COLLECTION OF INFORMATION,
INCLUDING SUGGESTIONS FOR REDUCING THIS BURDEN, TO DEPARTMENT OF AGRICULTURE,
CLEARANCE OFFICE, OIRM ROOM 404-W, WASHINGTON, D.C. 20250, AND TO THE OFFICE OF
MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (OMB NO. 0575-0059),
WASHINGTON, D.C. 20503.

FORM RECD 1944-14                                                    PAGE 3
                    UNITED STATES DEPARTMENT OF AGRICULTURE
                              RURAL HOUSING SERVICE
            PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
            ------------------------------------------------------------

6. DEFERRED PAYMENT CALCULATIONS
   DATE OF INITIAL DEFERRED PAYMENT AGREEMENT: 00/00/00

   ANNUAL NOTE PAYMENT AT 1%      $0.00    TOTAL ANNUAL INCOME X 29%    $0.00
   ANNUAL REAL ESTATE TAXES       $0.00
   ANNUAL PROPERTY INSURANCE      $0.00    MONTHLY DEFERRED PAYMENT     $0.00
   ANNUAL PITI                    $0.00    MONTHLY DEFERRED ASSISTANCE  $0.00

7. AS REQUESTED BY THE GOVERNMENT, THE BORROWER WILL SUBMIT TO THE GOVERNMENT,
   IN A FORM PRESCRIBED OR APPROVED BY IT, A STATEMENT OF THE BORROWER'S TOTAL
   ANNUAL INCOME AND EXPENSES FOR THE PREVIOUS CALENDAR YEAR OR OTHER
   DESIGNATED PERIODS.

8. THE GOVERNMENT MAY REVIEW THE BORROWER'S ANNUAL INCOME AND EXPENSES DURING
   THE TERM OF THIS AGREEMENT AND, IN ACCORDANCE WITH ITS REGULATIONS, MAY AT
   ITS DISCRETION INCREASE, DECREASE, OR CANCEL ANY AMOUNT OF PAYMENT
   ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE GRANTED UNDER THIS AGREEMENT.
   THE GOVERNMENT MAY ALSO DETERMINE WHETHER TO OFFER A NEW AGREEMENT FOR THE
   SUCCEEDING YEAR OR OTHER SELECTED PERIOD FOLLOWING THE PERIOD COVERED BY
   THIS AGREEMENT.

9. AT ITS OPTION, THE GOVERNMENT MAY TERMINATE THIS AGREEMENT AT ANY TIME IT
   DETERMINES THAT:
   A. THE BORROWER HAS DEFAULTED UNDER ANY TERMS OR CONDITIONS OF THIS
      AGREEMENT, THE NOTE, OR ANY INSTRUMENT SECURING THE BORROWER'S LOAN
      OBLIGATIONS.
   B. THE BORROWER HAS NEVER OCCUPIED THE DWELLING AND RHS WILL NOT CONTINUE
      THE LOAN.
   C. THE BORROWER CEASES TO OCCUPY THE DWELLING.
   D. THE PROPERTY SECURING THE LOAN OBLIGATION HAS BEEN SOLD OR THE TITLE
      TRANSFERRED WITHOUT THE GOVERNMENT'S CONSENT OR APPROVAL.
   E. THE BORROWER IS NO LONGER ELIGIBLE FOR PAYMENT ASSISTANCE OR DEFERRED
      MORTGAGE ASSISTANCE.

10. DEFERRED PAYMENTS CANNOT BE GRANTED AFTER 15 YEARS FROM THE EFFECTIVE DATE
    OF THE INITIAL PAYMENT ASSISTANCE AGREEMENT.  ALL DEFERRED PAYMENTS
    OUTSTANDING AT THE TIME THE PROPERTY IS SOLD OR TITLE TRANSFERRED ARE
    SUBJECT TORECAPTURE.

11. THE GOVERNMENT MAY AMEND OR CANCEL THE AGREEMENT AND COLLECT ANY AMOUNT OF
    REDUCTION GRANTED WHICH RESULTED FROM INCOMPLETE OR INACCURATE INFORMATION,
    AN ERROR IN COMPUTATION, OR ANY OTHER REASONS WHICH RESULTED IN PAYMENT
    ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE THAT THE BORROWER WAS NOT
    ENTITLED TO RECEIVE.

12. UPON THE FAILURE OF THE BORROWER TO MAKE THE PAYMENTS PRESCRIBED IN THIS
    AGREEMENT, THE GOVERNMENT, AT ITS OPTION AND SUBJECT TO ITS REGULATIONS, MAY
    DECLARE THE ENTIRE INDEBTEDNESS DUE TO THE GOVERNMENT IMMEDIATELY DUE AND
    PAYABLE.

13. NO TERMS OR CONDITIONS OF THE NOTE OR ANY RELATED SECURITY INSTRUMENT, OTHER
    THAN THE AMOUNT OF PAYMENT OR THE PAYMENT PLAN, SHALL BE AFFECTED BY THIS
    AGREEMENT.

14. THIS AGREEMENT IS SUBJECT TO THE PRESENT REGULATIONS OF RHS AND TO ITS
    FUTURE REGULATIONS NOT INCONSISTENT WITH THE EXPRESS PROVISIONS OF THIS
    AGREEMENT.

15. FOR LOANS APPROVED OR ASSUMED ON OR AFTER OCTOBER 1, 1979, ANY PAYMENT
    ASSISTANCE GRANTED AS A RESULT OF THIS AGREEMENT SHALL BE SUBJECT TO
    RECAPTURE BY THE GOVERNMENT WHEN THE PROPERTY SECURING THE LOAN IS SOLD,
    TITLE TO IT IS TRANSFERRED, OR WHEN IT IS NO LONGER OCCUPIED BY THE
    BORROWER.

16. IF THE DECISION CONTAINED IN THIS FORM RESULTS IN DENIAL, REDUCTION, OR
    CANCELLATION OF RHS ASSISTANCE, THE BORROWER MAY APPEAL THE DECISION AND
    HAVE A HEARING OR MAY REQUEST A REVIEW IN LIEU OF A HEARING.

```
FORM RECD 1944-14                                              FORM APPROVED
                   UNITED STATES DEPARTMENT OF AGRICULTURE    OMB NO. 0575-0172
                            RURAL HOUSING SERVICE
                PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
            ----------------------------------------------------------------
    EFFECTIVE: 06/27/05     PAYMENT PLAN: MONTHLY           AGRMT TYPE: NEW PRTCP
```

| ACCOUNT NUMBER | NOTE DATE | NOTE AMOUNT | MON INSTLMNT AT NOTE RATE | MONTHLY PAYMENT | MONTHLY PAYMENT ASSISTANCE |
|---|---|---|---|---|---|
| 3. 19 | 05/27/05 | 74,030.00 | 411.62 | 336.99 | 74.63 |

1. THIS AGREEMENT BETWEEN THE UNITED STATES OF AMERICA, ACTING THROUGH THE
   RURAL HOUSING SERVICE (RHS) PURSUANT TO SECTION 521 OF THE HOUSING ACT OF
   1949, (CALLED "THE GOVERNMENT") AND THE BORROWER WHOSE NAME APPEARS BELOW
   (CALLED "THE BORROWER") SUPPLEMENTS PROMISSORY NOTES OR ASSUMPTION
   AGREEMENTS (CALLED "THE NOTE" WHETHER ONE OR MORE) FROM BORROWER TO THE
   GOVERNMENT AS DESCRIBED ABOVE.

2. ADJUSTED FAMILY INCOME LIMITS FOR ALLEN COUNTY           AS OF 03/03/05
   VERY LOW:  $26,900   LOW:  $43,050   MODERATE:  $48,550   MEDIAN:  $53,800

3. HOUSEHOLD AND INCOME INFORMATION  -  TO BE COMPLETED BY THE BORROWER.
   COMPLETE THE FOLLOWING FOR BORROWER, CO-BORROWER, AND ALL ADULT MEMBERS OF
   THE HOUSEHOLD WHO WILL RECEIVE INCOME.

                              PLANNED INCOME
                              NEXT 12 MONTHS

| NAME | AGE | WAGES | OTHER | NAMES & ADDRESSES OF SOURCES OF INCOME |
|---|---|---|---|---|
| CAMERON J MARLEY | 20 | 25,241 | 0 | TRIPLE CROWN SERVICES, FT WAYNE IN 46825 |
| CAMERON J MARLEY | 20 | 2,580 | 0 | ARMY RESERVE |
| CANDIS N MARLEY | 20 | 8,359 | 0 | LUTHERAN HOSPITAL, FT WAYNE IN 46804 |
|  | 0 | 0 | 0 |  |

```
NUMBER OF DEPENDENTS (NOT INCLUDING FOSTER CHILDREN) RESIDING IN DWELLING  1
ANNUAL REAL ESTATE TAXES          (DWELLING ONLY)     900.00
ANNUAL PROPERTY INSURANCE PREMIUM (DWELLING ONLY)     496.00
```

SIGNATURES OF BORROWERS: I (WE) CERTIFY THAT HOUSEHOLD AND FINANCIAL INFORMATION
SUBMITTED TO RURAL HOUSING SERVICE IS CORRECT TO THE BEST OF MY (OUR) KNOWLEDGE
AND HAVE READ AND UNDERSTOOD THE REQUIREMENTS AND CONDITIONS ON PAGES 2 AND 3 OF
THIS AGREEMENT.

NOTICE: FAILURE TO DISCLOSE ACCURATE AND TRUTHFUL FINANCIAL INFORMATION MAY
RESULT IN THE TERMINATION OF PROGRAM ASSISTANCE CURRENTLY BEING RECEIVED, AND
THE DENIAL OF FUTURE PROGRAM ASSISTANCE.

WARNING: SECTION 1001 OF TITLE 18, UNITED STATES CODE, PROVIDES: "WHOEVER, IN
ANY MATTER WITHIN THE JURISDICTION OF ANY DEPARTMENT OR AGENCY OF THE UNITED
STATES KNOWINGLY AND WILLFULLY FALSIFIES, CONCEALS OR COVERS UP BY ANY TRICK,
SCHEME, OR DEVICE A MATERIAL FACT, OR MAKES ANY FALSE, FICTITIOUS OR FRAUDULENT
STATEMENTS OR REPRESENTATIONS, OR MAKES OR USES ANY FALSE WRITING OR DOCUMENT
KNOWING THE SAME TO CONTAIN ANY FALSE, FICTITIOUS OR FRAUDULENT STATEMENT OR
ENTRY, SHALL BE FINED UNDER THIS TITLE OR IMPRISONED NOT MORE THAN FIVE YEARS,
OR BOTH."

5-27-05                 Cameron J. Marley              Candis N. Marley
_____         _____      _____
   (DATE)                    (BORROWER)                    (CO-BORROWER)


                                                    EXHIBIT  B

Form RD 3550-12
(Rev. 8-00)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0172

Account          '9

## SUBSIDY REPAYMENT AGREEMENT

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Market value at time of initial subsidy $ 114,000.00            less amount of Rural Housing Service (RHS) loans
$ 74,030.00            less amount of any prior liens $ 40,042.00            equals my/our original equity
$ (72.00)            . This amount equals            0 % of the market value as determined by dividing original equity by the market value.

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 % | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

Market value (at the time of transfer or abandonment)

LESS
Prior liens,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements (see 7 CFR part 3550).

EQUALS
Appreciation value. (If this is a positive value, continue.)
TIMES
Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.



Borrower agrees to pay recapture in accordance with this agreement.

| Borrower | Date |
|---|---|
| Cameron J Marley | 05-27-2005 |
| Borrower | Date |
| Candis N Marley | 05-27-2005 |



*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

**LandAmerica**
> **Lawyers Title**

#205049817
Recorded
08/05/2005 14:07:02
RECORDER
PATRICIA J CRICK
ALLEN COUNTY, IN
Receipt No.        23681
DCFD               3.00
WGPP               0.50
WGST               2.50
MISL               2.00
MTG               22.00
Total             30.00

*004*

---

[Space Above This Line For Recording Data]

Form RD 3550-14 IN
(Rev. 4/98)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

## MORTGAGE FOR INDIANA

THIS MORTGAGE ("Security Instrument") is made on   MAY 27th, 2005   ,   . [Date]
The mortgagor is   CAMERON J. MARLEY AND CANDIS N. MARLEY

("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 5/27/2005 | $74,030.00 | 5/27/2038 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. § 1472(g) or 1490(a). For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
County , Indiana:   LOT NUMBER 46 IN HARLAN GARDENS, SECTION II, AS RECORDED IN PLAT CABINET E, PAGE 126 AND DOCUMENT NUMBER 202085895.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

which has the address of   16522 SUNFLOWER BLVD., HARLAN          , Indiana   46743
                          [Street]                          [City]              [ZIP]
("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Initials CM   CCM

Page 1 of 6

EXHIBIT   *C*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days

Initials _CM_  _SM_

of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the

Initials *om*  *CTM*

fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Initials  _UM_  _CTM_                                                                                   Page 4 of 6

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regula-tions.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the Note and any indebt-edness to the Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reason-able expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Lender's option, any other indebtedness of Borrower owing to the Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Lender and its agents may bid and purchase as a stranger and may pay the Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to the Lender, in the order prescribed above.

**24.** Borrower agrees that the Lender will not be bound by any present or future state laws prescribing any statute of limitations or limiting the conditions which the Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under state law, the benefit of all state laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supple-ment the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

   ☐ Condominium Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

_____ (Seal)
\* CAMERON J. MARLEY     Borrower

_____ (Seal)
\* CANDIS N. MARLEY     Borrower

Initials CM CTM               Page 5 of 6

## ACKNOWLEDGMENT

STATE OF INDIANA        )  
                              } *ss :*  
COUNTY OF _____ALLEN_____  )

Before me, _____BRENDA HAMMOND_____, a Notary Public, this

_____27th_____ day of _MAY_ , _2005_ , _CAMERON J. MARELY_____ and

_____CANDIS N. MARLEY_____ acknowledged the execution of the annexed mortgage.

(SEAL)

> Brenda Hammond
> Notary Public, State of Indiana
> Allen County
> My Commission Exp. 8/6/08
> County and State of Residence

_____ *Notary Public*

My commission expires_____

*\*Print, stamp or typewrite the names of the mortgagors and the notary just beneath their signatures.*

**Preparer's Statement**
The form of this Mortgage was prepared by the Office of the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of:

_____CLAUDIA J. KARGES_____
(Name)

_____
(Signature)

_____975 SOUTH 11th STRRET_____
(Address)

   DECATUR, IN  35733

Initials _am_ _CTM_

Page 6 of 6

Order No. : 101006354

 **Fidelity National Title** Insurance Company

**Lawyers Title, a division of Fidelity National Title**
**1106 Meridian Plaza, Suite 100**
**Anderson, IN  46016**
**765-643-7417 FAX 765-641-1378**

## Fidelity National Title Insurance Company

## TITLE INSURANCE COMMITMENT

**Order No.:** 101006354

**Effective Date: August 5, 2005 to** July 28, 2010 at 8:00 a.m.

## Schedule A

1.  **Policy or Policies to be issued:**

    ALTA Owner's Policy - 06/17/06

    **Proposed Insured:**   To Be Determined

    **Amount:**   "TO BE DETERMINED"

2.  **The estate or interest in the land described or referred to in this Schedule**
    **and covered herein is a  Fee Simple and title thereto is at the effective date**
    **hereof vested in:**

    Candis N. Marley

3.  **The land referred to in this Commitment is described in Exhibit "A" attached**
    **hereto and made part hereof.**

**NOTE: An update is included at no additional charge.  Fax request to 765-641-1382.**

Countersigned:
By:

*Wendy S. Malone*

Wendy S. Malone
Authorized Officer
August 03, 2010
WM1

EXHIBIT___ *D*___

## SCHEDULE B - SECTION 1
## REQUIREMENTS

The following are the requirements to be complied with:

Item (a)  Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest, mortgage or lien to be insured.

Item (b)  Proper instrument(s) creating the estate or interest to be insured must be executed and duly filed for record, to wit:

1. Warranty Deed executed by fee simple title holder vesting fee simple title to the proposed insured owners, as shown in Schedule A.

2. State Form 46021 (R9/7-09) "DISCLOSURE OF SALES INFORMATION" must be completed by the buyer and seller and attached to the deed or other document transferring title before the document will be recorded by the county recorder.

3. As per the purchase agreement, current taxes and/or drain assessments as shown in Schedule B-Section 2 are to be paid.

4. Vendors Affidavit to be furnished.

5. Release of mortgage from Cameron J. Marley and Candis N. Marley to National City Bank of Indiana, in the amount of $31,542.00 recorded September 5, 2005 as Instrument Number 205049816 of the Allen County records. Last Assignment of the mortgage to U. S. Bank N.A., recorded October 19, 2005 as Instrument Number 205068653 in the Allen County records. **( 4801 Frederica Street Owensboro, KY 42301  Resident Agent: Bob Smiley)**

6. Release of mortgage from Cameron J. Marley and Candis N. Marley to United States of America acting through the Rural Housing Service, in the amount of $74,030.00 recorded August 5, 2005 as Instrument Number 205049817 in the Allen County records.

7. Release of mortgage from Cameron J. Marley and Candis N. Marley to Indiana Housing Finance Authority, in an unspecified amount, recorded August 5, 2005 as Instrument Number 205049818 in the Allen County records. **(30 S. Meridian Suite 1000 Indianapolis, IN 46204 Resident Agent: Kimberly Wize)**

8. Release of Real Estate Retention Agreement from Cameron J. Marley and Candis N. Marley to Marklebank, in the Grant Award amount of $5,000.00 recorded August 5, 2005 as Instrument Number 205049819 in the Allen County records. **(325 South Main Street Bluffton, IN 46714 Resident Agent: Rick Myers)**

NOTE: A  chain of title was done and we find the following:

A Quitclaim Deed recorded May 4, 2009 from Cameron J. Marley to Candis N. Marley as Instrument Number 2009021319.

NOTE: If an insured closing is completed by Lawyers Title, a division of Fidelity National Title, short form policy/policies will be issued at the time of closing.

NOTE: By virtue of I.C. 27-7-3.6, a fee of $5 will be collected from the purchaser of the policy for each policy issued in conjunction with a closing occurring on or after July 1, 2006. The fee should be designated in the 1100 series of the HUD form as a TIEFF (Title Insurance Enforcement Fund Fee) charge.

NOTE: If Lawyers Title, a division of Fidelity National Title, will be serving as the closing agent and this closing will take place on or after July 1,2009, funds provided in excess of $10,000.00 must be wired and funds less than $10,000.00 must be good funds in compliance with IC 27-7-3.7.

**NOTE: A Judgment search was done ont Cameron J. Marley and Candis N. Marley, individually, and we find the following:**

**Decree of Divorce and/or Separation Agreement, filed April 21, 2009 between Candis N. Marley, Petitioner and Cameron J. Marley, Respondent in Allen County Superior Court, as Domestic Relations Cause Number 02D07-0706-DR000636, Allen County, Indiana.**

**NOTE: The Bankruptcy Courts of the Northern District of Indiana have been run and we find nothing of record.**

## SCHEDULE B - SECTION 2
## EXCEPTION

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquires for the value of record the estate or interest or mortgage thereon covered by this Commitment.

2.  Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters not shown by the public records which would be disclosed by an accurate survey and inspection of the land described in Schedule A.

3.  Easements, or claims of easements, not shown by the public records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title that would be disclosed by an accurate and complete land survey of the land. The term "encroachment" includes encroachments of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing improvements located on adjoining land.

5.  Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

6.  Taxes or assessments which are not shown as existing liens by either the public records or the records of any taxing authority that levies taxes or assessments on real property.

7.  Taxes for the year 2007 due and payable in 2008 each installment for $300.63 are assessed in the name of Candis N. Marley. 1st installment amount is PAID. 2nd installment is UNPAID. Assessed Value:  Land- $23,900.00; Improvements- $85,500.00; Exemptions- $70,540.00 Mortgage, Supplemental, Standard Deduction; Tax Identification Number 02-04-32-277-019.000-062; Brief Legal Description: Lot 46 Harlan Gardens Section II.

8.  Taxes for the year 2010 due in 2011 are not yet due and payable.

    NOTE:  Added improvements in place as of March 1, 2010 are subject to assessment which could increase the tax amounts due in 2011, in such cases, the town or township assessor should be contacted relative to possible new assessment amounts.

    NOTE:  The real estate tax information set out above is all that is currently available in county tax computer. Recent computer program changes may have rendered incomplete or inaccurate the available data. THIS INFORMATION MAY NOT BE SUFFICIENT FOR THE PURPOSE OF ESTABLISHING A PROPER REAL ESTATE TAX ESCROW. Neither the company nor its agent, assume or accept any responsibility for loss, damage, cost or expense due to, or arising out of the unavailability of accurate tax information.

9.  Covenants, conditions, restrictions and terms and provisions set out in any deed, plat or declaration, and any amendments thereof, if any. Violation thereof will not cause forfeiture or reversion of title.

10. Easements for drainage and/or utilities and incidental purposes, if any.

11.     Building lines, set-back lines, front, back and side yard buffer lines, if any.

12.     Possible Homeowners Assessment levied, if any.

13.     Possible municipal and/or sewer assessments which may be levied by the municipality, if any.

14.     Possible assessment for periodic ditch maintenance which may be a lien but is not assessed as of the date of this commitment.


Note: any exception contained herein omits any covenant, condition or restriction based on race, color, religion, sex, handicap, familial status or national origin as provided in 42 u.s.c. Section 3604, unless and only to the extent that the covenant (a) is not in violation of state or federal law, (b) is exempt under 42 u.s.c. Section 3607, or (c) relates to a handicap, but does not discriminate against handicapped people.

Note: if policy is to be issued in support of a mortgage loan, attention is directed to the fact that the company can assume no liability under its policy, the closing instructions, or insured closing service for compliance with the requirements of any consumer credit protection or truth in lending law in connection with said mortgage loan.

## EXHIBIT "A"

LOT NUMBER 46 IN HARLAN GARDENS, SECTION II, AS RECORDED IN PLAT CABINET E, PAGE 126 AND DOCUMENT NUMBER 202085895.

Property
Address:                     16522 Sunflower Blvd., Harlan, IN  46743



2009021319
RECORDED ON
05/04/2009   08:44:07AM
JOHN MCGAULEY
ALLEN COUNTY RECORDER
FORT WAYNE, IN

# QUITCLAIM DEED

REC FEE:  20.00
TRANS # 58341

Mail tax bills to:

16522 Sunflower Boulevard

Harlan, Indiana 46743

THIS INDENTURE WITNESSETH, that **CAMERON J. MARLEY**, over the age of eighteen (18) years of Allen County in the State of Indiana ("Grantor"), **RELEASES AND QUITCLAIMS UNTO CANDIS N. MARLEY**, of Allen County in the State of Indiana ("Grantee"), in consideration of Ten Dollars and No Cents ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, real estate located in Allen County, Indiana, more particularly described as follows, to-wit:

See attached Exhibit "A."

**SUBJECT** to all conditions, easements, restrictions, and limitations of record, as well as all applicable zoning ordinances.

The above grant of real estate from Grantor to Grantee shall be subject to the outstanding mortgages due USDA and U.S. Bank, as well as all other liens, assessments, and other matters of public record, all of which Grantee assumes and agrees to hold Grantor harmless therefrom, including reasonable attorney fees.

This conveyance is made in fulfillment of the terms and provisions of that certain Decree of Dissolution of Marriage of Grantor and Grantee herein entered _April 21_ , 2009, in Cause No. 02D01-0706-DR-636, of the Allen Superior Court.

DATED: _4/17/09_ .

_____
(Signature)

**CAMERON J. MARLEY**

(Printed Name)

45848
RE: 1 2 ...

EXHIBIT____E____

STATE OF INDIANA     )
                     ) SS:
COUNTY OF ALLEN      )

Before me, a Notary Public in and for said County and State, this 17th day of April, 2009 , appeared **CAMERON J. MARLEY**, over the age of eighteen (18) years, who acknowledged the execution of the above and foregoing Quitclaim Deed. I have, in witness thereof, subscribed my name and affixed my official seal.

My Commission Expires:
_Aug 28, 2014_

Resident of:
_Allen County, Indiana_

_Holly Lewis_
**NOTARY PUBLIC**

_Holly Lewis_
**PRINTED NAME**

This instrument prepared by PERRY D. SHILTS, ESQ., 10311 Dawson's Creek Boulevard, Suite C, Fort Wayne, Indiana 46825. Telephone: (260) 489-0700, and I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law. Perry D. Shilts

EXHIBIT A
Legal Description


Harlan Gardens Sec II Lot 46.

More commonly known as: 16522 Sunflower Boulevard, Harlan,
Indiana, 46743.